To our sixth and final argument of the morning, it's in Appeal No. 24-1042, Jim Rose v. Mercedes-Benz USA. Mr. Wright, good morning. Good afternoon, Your Honor and may it please the Court, I'm David Wright and I represent Plaintiff Appellants Jim Rose and Anita Jeanne. Your Honor, the sole issue before this Court is what quantum of evidence of mutual assent will satisfy a moving party who is attempting to enforce an arbitration agreement to establish that an agreement of arbitration actually exists? The District Court's answer in this case is almost none at all. And this is governed, in this case, Plaintiff Appellant Jim Rose is an Illinois citizen. His would be governed by Illinois law, which is what the District Court referenced in its ruling. Anita Jeanne is a resident of New York, and while the Court did not conduct an independent analysis under New York contract formation law, it presumably would be the same. Under Illinois law, the existence of a contract, its terms, and the party's intents are questions of fact to be determined by the trier of fact. Whether parties have mutually assented to the terms of the contract is a question of fact to be determined by an objective standard. In this case, the Court ruled that Mercedes-Benz had made a prima facie showing that there was mutual assent to the terms of service agreement related to the Embraer subscription service, and that the plaintiffs had failed to rebut that. This does not claim they do not recall receiving the terms of service. They're not claiming that they never received the terms of service, right? The plaintiffs in their declaration both state that they do not recall having ever clicked on the I accept button referenced in one of the two ways the subscription service can be subscribed to, and they did not recall ever receiving the terms of service agreement. Mind you, these declarations were six and five years after the events took place. The District Court emphasized that fact in finding that the plaintiffs had failed to rebut the showing by Mercedes-Benz as to mutual assent. But that's not dispositive here, because the Court did rule as a matter of law, based on what it viewed as undisputed fact, that mutual assent had been established. And in so doing, a decision which this Court reviews de novo, that Court erred. That Court committed error, because even if it, what would be happening is if the Court required the plaintiffs in this case to say affirmatively, I never received the terms of service agreement. If that were the inquiry, that improperly shifts the burden to the plaintiffs. The law is clear. Mercedes-Benz has the burden of establishing mutual assent to the contract that includes the arbitration provision. So here we have to look at the declaration that Mercedes-Benz offered. I don't know if it really shifts the burden of proof. It shifts the burden of production, right? I mean, this happened in summary judgment all the time, where the moving party puts, you know, where a defendant moves for summary judgment, and they produced or point to an undisputed facts, and then it's the non-moving party's burden to come and point to something that would dispute that. And so here, you know, Mercedes-Benz said, with the declaration of Thomas Crix, I think, that, you know, this is what the practice was at the time. And so if they subscribed, then they would have gotten this. They would have had to do this. And the plaintiffs come and say, you know, we don't know whether or not we did that. How does that create a dispute of fact? If Mr. Crix had said with any detail what the practice was at the time, this perhaps comes to a different result. We have to go back to that declaration, because there were some serious errors made based on that declaration, the most notable of which was, both the district court at page 8 of its ruling, and the appellee in its brief to this court, both state that Mr. Crix states, on numerous occasions, plaintiffs were provided with the terms of service agreement. That was included in both the order and appellee's position. But let's look at the declaration, which is appendix page A1, paragraphs 4 and 5. Mr. Crix, who, by the way, was an engineer in the connected car department from 2020 to 2023, he never says, he references paragraphs 1 and 5 in the present tense. He doesn't refer to what was the practice in 2015 or 2017 when plaintiffs purchased their vehicles. He says there's two ways you can subscribe. One is at the dealership, the consumer may be presented with an iPad or a computer where they have to click an I accept button. The second way is they can call a call center. Now, we don't know if this call center, presumably operated by Verizon Telematics Inc., who's the contracting party for the Embrace service agreement, that they can call the call center. So let's talk about the first way. There is no information provided by Mixter Crix, what appears on the page that includes the I accept button, other than there's an I accept button. We don't have a screenshot to show what it shows. We don't have him describing what text appears on the I accept button to lead the consumer to understand what they're accepting. He does not say that the terms of service are included in an inset box that the person can scroll through, which would be the case with the clip wrap agreement. He does not say. Was he asked those questions? Was there any follow-up? There was no hearing on this, Your Honor. There was a motion to compel arbitration. His declaration was provided, the parties opposed on the papers, and the court issued its ruling without a hearing. There was no trial. There was no evidentiary hearing. So the plaintiff did not request any discovery with regard to Mixter Crix's motion? Plaintiffs did not request any discovery with regard to it. However, plaintiffs, given the paucity of Mixter Crix's declaration, should not have been required to conduct discovery. It is Mercedes Benz's burden to establish that there was mutual assent. So with the click button, there's simply no information of the record about what's referenced there. I understand, you know, your argument that Mercedes did not provide specific evidence that it gave plaintiffs notice of the terms of service. But, in your view, absent the some sort of admission from plaintiffs that they received notice to the terms of service, what evidence could Mercedes provide that would sufficiently demonstrate that Rose and Gian received notice? So again, by looking at what was, by looking at the numerous cases that, both at the district court and appellate court levels that have dealt with this, there are a number of things they could have said that they did not. First of all, with regard to, and I need to finish this thought, with regard to the call center, there's no information about what the call center would have, an operator at the call center, would have provided the plaintiffs with regard to the information about the terms of service agreement. What he says in his declaration is, individuals who enroll via the Embrace call center are informed about the TOS agreement verbally during the call and are told where they can locate and review the TOS agreement. He does not say what they're told about it. He does not say what specifics are provided. He does not say whether they're informed that there is an arbitrary, mandatory arbitration provision. He does not say where the TOS agreement was located that they could go see it, whether that's because he doesn't know or whether that's because they, you know, he, they failed to set forth here. There's no call script. There's no training materials. Presumably call centers would have that type of material. That should have been produced if they had it. Then he goes on to say, after the subscription is entered into by the plaintiffs, they would receive a welcome kit, one, and a welcome email, two. As to the welcome kit, what he says, and this is paragraph seven, following activation of Embrace, subscribers receive various documents, including a welcome kit that once again informs them the service is subject to a TOS agreement. He does not say the TOS agreement is included with the welcome kit. They do not provide a copy of the welcome kit or an exemplar of the welcome kit, and with regard to the welcome email, this is the closest they get. They say there's a link to the TOS agreement in the welcome email, but they don't provide the welcome email so this court can conduct its fact-intensive analysis to determine whether that would put this consumer on notice or an objective, objectively put the consumer on notice of the terms to which they're giving assent. So it's that failure that dooms the motion, and I would just direct this court, the district courts have dealt with almost identical scenarios, both in Melvin v. Biggarts data and in Gilbert, the IC systems, where almost identically vague declarations were provided in support of a motion to compel arbitration, and the district courts in those cases said it is impossible for the court to conduct the fact-intensive legal inquiry it must make in order to determine whether a contract was formed that includes the arbitration provisions in those cases. Okay, Mr. Wright, let's do this. Let's hear from, I'll give you a couple minutes on rebuttal, okay? Let's hear from your adversary and we'll pick it up from there. Thank you, Your Honor. You're welcome. Good afternoon, Your Honors. Good afternoon, counsel. May it please the court. I'd like to start, if I could, with the last thing that the opposing counsel was discussing, which is these cases, Melvin and similar district court cases, and this sort of theme runs through the brief of the appellants where they're trying to analogize this case to these sort of, I'll call them the hybrid browse-wrap cases in which there's a transaction that takes place completely online. I think that whole structure is wrong. Those cases are about constructive, not actual notice, and I'll get to why that's relevant here, and they're also about transactions that took place solely over the Internet with sort of a single transaction where there was some legitimate question about, and this is a quote from Seguros, whether the plaintiffs would realize they were agreeing to a contract at all. Neither of those things is true in this case. First, here, the district court found that plaintiffs had actual notice of the terms of service. That's a factual finding which even the plaintiff's brief acknowledges is actually reviewed for clear error in this context. That's from the Cass case, and the plaintiffs offered no evidence whatsoever rebutting that, and Mercedes actually showed that plaintiffs agreed to the TOS at the time of their initial enrollment and that they were subsequently repeatedly informed of the terms of service, both in the welcome kit and the welcome email that proposing counsel mentioned, but also in subsequent communications before they signed up for and then paid monthly for the service. So this is, that gets to the second point, which this is not the sort of Internet-only browse route transaction that we see in cases like Melvin where there's this sort of detailed analysis of the font and the layout. Yeah, Mr. Wilkerson, can I ask you a question that throws me off about this case? Yes. Okay. So, you and your adversary and the district court, to my eye, and it may be correct, I just need it explained to me.  Everyone is focused on whether there is a scent of basically at the time that Mr. Rose and Ms. Guillen bought the vehicles and activated the Embrace service. That's what everybody's focused on. That's what the argument we just heard from Mr. Wright is about. That's what your argument is about. That's the way the district court proceeded. Well, I agree that there was a significant focus on that. I would say that we emphasized and continue to emphasize here before this court that even if there were not a scent at that time, that there was a scent at later times, including the renewal. Okay. So that's what I want to focus on because with a subscription-based product where a subscription has a beginning point and an end point. And let's just focus. I'm pretty sure it's true with respect to Mr. Rose, and it's definitely true as to Ms. Guillen. Okay. She received a complimentary subscription for seven months. Yes, Your Honor. And that complimentary subscription began in or about January of 2015. I'm looking right at paragraph 17. Yes, Your Honor. If you don't mind, I'm going to go ahead. Okay. Go ahead. Okay. And then we know that she paid monthly subscriptions thereafter. That's correct. And then she stopped in November of 2022. That's correct. Okay. So when we focus, when we look in turn to the underlying class action complaint that Mr. Wright's clients filed, okay, the claims in that underlying complaint, as I've sorted them out, or best you can help me here, they seem to sort into kind of two buckets, if you will. One bucket are the warranty claims arising from Mercedes' alleged failure to replace the system when it became obsolete, when G3 was no longer there. Okay. And the second category of cases are like false advertising, fraud, unjust enrichment, all of that. Okay. Now if that's right, the first category of claims would have only arisen at the time of the renewal for somebody like Ms. Guillen. It's the only thing that would make any sense. Yes, Your Honor. Okay. If that's right. Although I'm not sure it matters for purposes. It's undisputed that these Well, here's why I'm getting at this. We know, at least as I read it, the U.S. Supreme Court on two different occasions in Dean Witter and then in 2011 in KPMG said, arbitration is not all or nothing. What they very clearly said there is you have to examine the underlying complaint and determine which claims are subject to arbitration. Some may be, some may not be. For those that are, they go to arbitration. For those that aren't, they don't go, even if that results in very inefficient litigation. Okay. They did that per curiam. And so what I'm wondering about here is when you look at the Guillen situation, I think it's there for Rose too. What do we know about assent at the time of renewal from the declaration? Well, we know that the terms of service provided that continued use of the service would constitute assent. And just to be clear, I don't, although the other side argues in their brief that they contest assent, if you go read their briefs, they're really just arguing notice. They don't contest that if it's the case that you're on notice of the terms of service, that your continued use of that service would constitute assent. Okay. Here's all we know to my eye. You can tell me I'm wrong. You know this declaration better than I do. All right. Paragraph 7. The TOS agreement is also referenced or otherwise linked to subsequent communications with subscribers, including renewal reminders. That's all we know about it. Well, if they knew about the terms of service that governed it, then we know what those terms say about accepting the terms. And that's at A18. The terms of service effective May 17th, 2016. I don't know. What I don't know is did the renewals occur? These are questions I have. I don't think the declaration answers it. Did the renewals occur by email? That seems to be the U.S. mail. I don't know. Well, I don't understand, Your Honor, why it matters. It matters because of what the U.S. Supreme Court has held in Dean Witter and in KPMG. That's why it matters. I don't think so. Because if there was notice of these terms at the time of the renewals, then the renewal, however accomplished, whether via email. Where can you tell us that there was notice of the terms at the time of the renewal based upon the record before us? There was notice of the terms at the time of the sign-up. Obviously, the time of the renewal is subsequent. Are you going to pay attention to my question? Yes, I'm listening, Your Honor. Yes. My question is based upon this declaration. That's what I want you to focus on. That's what I'm asking you about. Yes, Your Honor, I understand the question. What is your client? Maybe I don't understand the premise. Will you listen to my question? Yes, Your Honor. The premise is based upon the United States Supreme Court's decisions in Dean Witter and KPMG. That assent is not an all or nothing matter. And so the premise is in a subscription-related context, which is the context before us here. How do we figure out assent? And my question is, you have Ms. Guillen saying, I renewed a bunch of different times. And so the premise is whether that renewal included assent. That's my question. Right. And I suppose what I'm trying to respond is that if you're saying, and I think you are, that the declaration provides evidence that there was notice of the terms at the time of the, and provides evidence. It's a question. That's my question. How should, against the backdrop of that question, how should we analyze this? Well, I believe that Your Honor should find, as you said, that the district court focused on whether there was assent at the time of the initial sign-up. And that that was not an erroneous finding. That that was based on unrebutted evidence in the record. And that from there, there's no need for a separate showing of assent each time that the. Okay. Now you're getting to it. Why? In a subscription-related matter. Well, because if you are subscribing to a service and you're aware of the terms that apply to that subscription, then when you choose to continue to renew that service, that is an objective manifestation of your continued assent to those terms. And that's all that's required. Assent is a manifestation, an objective manifestation of content that you have reason to notice. So does it matter? So you're, okay. So your position is that as a legal matter, if we look at what Ms. McKeon has said, or I'm sorry, what the, how do you say it? Grits? Grits. Yeah. When you look at the grits declaration in paragraph 19, that she was renewing every six months, is it your position as a legal matter that we need not concern ourselves with whether those renewals contained assent? My, my, well, I have two positions. One is that it's not actually contested that they contained assent. That if you read the, the appellant's brief, this issue, this case is really entirely about notice. And secondly, that that evidence is sufficient to find an objective manifestation of assent. Because if we accept- And what's the underlying evidence? That the fact of renewal is objective manifestation of assent if you had, if you had notice and assented to those terms in the first instance. So if the two of them had said, or the whole class, whatever, had said, nah, we don't want to renew, then what? Well, had they not renewed the service then at least as to claims arising thereafter, they may have an argument that they were not subject to the, I don't want to, I'm not sure whether they'd have that argument, whether that would be a successful argument or not, but it would be at least an arguable point. Mr. Wilkinson, did these, did the plaintiffs or the peer of class members receive renewal reminders as their, as the time came to renew their subscriptions? Yeah. Your Honor, I believe Mr. Griggs's declaration notes that there were, that there were, the terms of service were referenced or otherwise linked to in subsequent communication with subscribers, including renewal reminders. So when it, so if I had a six month plan and presumably in the fifth month, I would get an email from Mercedes Benz saying, oh, it's time for you to renew. And by the way, these are the terms of service. Yes, Your Honor. Okay. Yeah. So the legal question is whether that's, whether the legal question is whether we should focus at all on renewal assent. Yeah. And Your Honor, I guess my answer would be that even if you do, that all that is required is an objective manifestation of assent and that the law is quite clear that the use of a service, the ongoing use of a service does objectively manifest assent and that I, and that while there are headings in the plaintiff's briefing about assent, if you go read those arguments, there is no argument that you may objectively manifest assent by continued use of the service. The only argument is as to notice. And here, the district court found actual notice that was based on unrebutted evidence in the record. And just one more point, because I know my time is well expired, is that the other side said, well, that would, that would effectuate a burden shift if we had to come forth with affirmative evidence. That is exactly what this court said in tender. That the, once the advocate for, for arbitration comes forward with evidence sufficient to show that there was an arbitration agreement, then the other side must come forward with specific evidence. I can't just have general denials. This court in Cass called out specifically the fact that a failure to remember, a failure of recall was insufficient. That's also, I believe in the Boomer case. So these are well-established legal principles. Okay. Mr. Walker. Thank you. May I, may I quickly ask? Please. Okay. Thank you. So I take it that your bottom line position is this, that the shortcoming is that neither Rosen or Geant stated anywhere that they did not agree to the terms of service. They only say they do not recall seeing the terms of service and they have not addressed the repeated resubscriptions after the initial subscription, at which point they would have been reminded about the terms of service. Is, is that it? Is that your position? I, I, yes, Your Honor. It is. And I would just call out that those repeated resubscriptions have another important legal consequence, which is that they sharply distinguish this case from the cases on which they rely, in which there's a singular transaction. This was an ongoing subscription service, which these plaintiffs allege in their complaint, they knew about and cared about before they ever walked into the dealer. The idea that they didn't know there was terms of service here is, is it was correct for the court to find there was no material issue of fact about that. Thank you, Your Honors. Mr. Wilkerson, thank you. Okay, you might want to address this renewal point. Is renewal, is renewal in the case, or is it not in the case, and how should we think about it? So, Your Honor, respectfully, I think the court should think about the renewal, apply the same analysis, it should be a rigorous analysis that applies to the initial sign-up. Was the consumer put on notice of the terms of service agreement? I didn't finish my thought from, from my prior argument. I, I just want to do that, because if you look at, and it all comes down to the Griggs Declaration, if you look at paragraphs four, five, and seven, where it talks about the initial sign-up, the welcome kit, the emails, and the renewal reminders, nowhere in those four paragraphs, or I'm sorry, in those three paragraphs, does it ever say the consumers were provided with the terms of service agreement. Even with respect to the renewal reminders, not only does it not say how those reminders were delivered, was it email, was it U.S. mail, was it some other means, nor does it say when, six months before, six days before, gives no information. It says in the alternative, the TEOS agreement is also referenced or otherwise linked in such communications, leaving the court to guess, is it referenced, or is there a hyperlink? If there's a hyperlink, does that hyperlink appear in sufficient font, colors, different font styles, to put the person on notice? All the normal five-step factual inquiry this court has adopted, you would have to do, or if it's not linked, but just referenced, what does that mean? Is it referenced that there is a term of service agreement? Okay, so what your adversary says in response to that is it really doesn't matter, because they continue to use it. They continue to, she, what's her name, Guillen? Guillen and Rose both continue to use it, but we contend not only were they not informed of the, to be precise, not only has Mercedes-Benz not established that they were informed of the terms of service agreement when they renewed, they haven't established it in the initial subscription phase. If you accept for argument purposes, and I know it's not your position, just accept it for discussion purposes, that the initial assent is there, okay? Does the continued use alone, is it sufficient for assent at the renewal period as a legal matter? As a legal matter, that's an interesting question. Of course, if there was an amendment, and here there were amendments to the, there's two different terms of service agreements that are included in Mr. Gritz's declaration. If there's any amendments, certainly the consumer would have to be put on notice of those for there to be any legal significance of their resubscription or continued use of the service. In this case, we don't know what they were told at the time of the renewal. If there was no change in the agreement, does the renewal constitute, what do they think they're renewing? I mean, I guess in the hypothetical, and I disagree with the court, that they were told. But if they were told, if they were provided a copy at the dealership, here's the terms of service agreement, take 10 minutes and go read them and then sign this, then do I think that that would somehow not carry forward to a resubscription? I would think likely not. Is there anything... That's not, I'm sorry? Is there anything to indicate that between the time Mr. Rose or Ms. Guillen initially subscribed and then renewed that the terms of service changed? Because I think there's one on like a 2013 and a 2016. Correct. But Mr. Rose and Ms. Guillen, they, let's see, Mr. Rose comes in later, right? They had different. Mr. Rose was Mr. Rose was 2017, I believe, and Ms. Guillen was 2015. So when she initially subscribed to the Embrace service, she would have been under the 2013 terms of service agreement. When Mr. Rose subscribed in 27, in December 2016, he would have been agreeing to the 2016 version of the terms of service agreement. And this is the point I wanted to complete. The misconception that Mr. Rose and Ms. Guillen were provided with the terms of service agreement comes from paragraphs 16 and 20. Because that's the only place in the record that there's a statement made that Mr. Rose and Ms. Guillen were provided with the terms of service agreement. But if you look at paragraph four, paragraph five, paragraph seven, nowhere does it state that the plaintiffs were provided with the terms of service agreement. And that is significant for the court to be concluding, the district court to be concluding as a matter of law that it did, that they were on notice of that terms of service agreement. And that's where the court erred. This should be sent back, I respectfully submit this should be sent back to the district court, either to reverse its ruling or for further findings to see what actually happened, both at the initial subscription stage and in any of the renewal subscription stages. Okay. All right. Hearing no further questions, Mr. Wright. Thank you, Mr. Wilkerson. Thanks to you. Thanks to your colleague. We'll take the appeal under advisement. Thank you, Your Honor. And that concludes our arguments.